UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOM COHELEY,

    **Plaintiff,**

v.                                                 Case No: 8:19-cv-185-T-27CPT

LENDER LEGAL SERVICES, LLC,
and SELENE FINANCE, LP,

    **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are motions to dismiss by Defendants Selene Finance, LP (Dkt. 17) and Lender Legal Services, LLC (Dkt. 18). Coheley opposes the motions. (Dkts. 19-21). Upon consideration, the motions are **GRANTED** *without prejudice*.

### I. FACTUAL ALLEGATIONS

Accepting the allegations of the complaint as true, Coheley is a resident of Pasco County. (Dkt. 1 ¶ 5). Selene Finance, LLC (Selene) is a debt collection company that acquired a debt on a home loan for which Coheley was the debtor. (Id. ¶¶ 6, 9). Selene retained a law firm, Lender Legal Services (LLS), to collect the debt. (Id. ¶¶ 7, 10). In November 2018, LLS sent Coheley a letter demanding he pay off the debt.[1] (Id. ¶ 10; *see also* Dkt. 1-2). The letter states it

> is being sent to you pursuant to your request. The reinstatement amount . . . is $120,127.84. The payoff amount . . . is $217, 359.47. . . . The law

---

[1] Selene Finance characterizes the letter as a "reinstatement and payoff quote" provided to Coheley's counsel in a foreclosure action. (Dkt. 17 at 1; *see also* Dkt. 18 at 3). The letter was apparently sent in response to a written request by Coheley's attorney, which Coheley attached to his opposition to the motion to dismiss. The request reads, "Please provide REINSTATEMENT and PAYOFF figures for the above-referenced client and matter." (Dkt. 21-1).

1

> firm [LLS] has been hired by [Selene] ("Debt Collector") to collect a debt on behalf of entity entitled to enforce the Note and Mortgage. . . . This is an attempt to collect a debt and any information obtained will be used for that purpose.

(Dkt. 1-2).

Coheley alleges the letter "demands payment of a total lump sum amount with no detailed breakdown or itemization of any particular charges in violation of Florida and federal law," and is "misleading because it gives a false impression of the character of the Alleged Debt." (Dkt. 1 ¶¶ 11-12). Coheley also contends the letter "hides the true character of the Alleged Debt and impairs [his] ability to knowledgeably assess [its] validity." (Id. ¶¶ 22, 35, 49, 62). He brings claims for violations of the Fair Debt Collection Practices Act (FDCPA) against Selene (Count I) and LLS (Count III), and violations of the Florida Consumer Collections Practices Act (FCCPA) against Selene (Count II) and LLS (Count IV).

Selene and LLS contend the Complaint does not allege the letter demanded an incorrect amount and that the failure to itemize the amount due does not violate the FDCPA or FCCPA. (Dkt. 17 at 2, 6; Dkt. 18 at 4). LLS also contends the allegations are insufficient to establish that it is a "debt collector" under the FDCPA (Dkt. 18 at 5-7), that it knew it was attempting to collect an illegitimate debt (id. at 10-11), or that the letter was an attempt to collect a debt (id. at 7-10). Finally, Defendants argue the FCCPA claims are barred by Florida's litigation privilege. (Id. at 12-13; Dkt. 17 at 2).

## II. STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the

elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

A complaint's factual allegations must be accepted as true for purposes of a motion to dismiss, but this tenet is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. DISCUSSION

The motions to dismiss are due to be granted. Although the allegations demonstrate that Defendants engaged in debt collection activity, they are insufficient to establish that LLS is a debt collector as defined by the FDCPA, or that conduct by either Defendant violated the FDCPA or FCCPA. Finally, a determination on the applicability of Florida's litigation privilege is premature.

*FDCPA*

The FDCPA prohibits debt collectors from "making false or misleading representations and from engaging in abusive and unfair practices in connection with the collection of any debt." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297-98 (11th Cir. 2015) (citing §§ 1692d-f).

3

To establish a claim, Coheley must show: (1) he was the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission that was prohibited by the FDCPA. *See Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1204 (M.D. Fla. 2015). Because the allegations do not establish that LLS is a debt collector or that either Defendant engaged in conduct that was prohibited by the FDCPA, the complaint does not state an FDCPA claim.

1. There Was Collection Activity Arising from Consumer Debt

Coheley has sufficiently alleged that Defendants engaged in debt collection activity. "[I]f a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the Act." *See Roth v. Nationstar Mortg., LLC*, No. 2:15-cv-783-FtM-29MRM, 2016 WL 3570991, at *2 (M.D. Fla. July 1, 2016) (quoting *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014)). Relevant factors include references to the "repercussions if payment [is] not tendered," or an "implicit or explicit demand for payment." *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553-54 (11th Cir. 2015). Language that the collector is "attempting to collect a debt" also reflects debt collection activity. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012).

LLS' November 20, 2018 letter states the reinstatement and payoff amounts are "good through December 31, 2018." (Dkt. 1-2 at 1). It also advises that "fees, costs and funds can accrue, and/or be advanced at any time, which could change the amount due." (Id.). This language implies consequences for late payment. The letter also notifies Coheley that "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose." (Id.). These allegations are sufficient to establish debt collection activity.

4

LLS' argument that the letter was sent in response to Coheley's request and its reliance on *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422 (6th Cir. 2015) are unavailing, at least at the motion to dismiss stage. (Dkt. 18 at 9). In *Goodson*, the Sixth Circuit affirmed summary judgment for the defendant, in part, because certain correspondence "was sent not to induce payment, but rather to respond to [the debtor's] inquiry." *Id.* at 432. But, unlike the correspondence here, that communication did not "state a balance due, indicate that it was an attempt to collect a debt, or threaten negative consequences should [the debtor] fail to pay." *Id.*; *see also Mansoorian v. Brock & Scott, PLLC*, No. 8:18-CV-1876-T-33TGW, 2018 WL 6413484, at *3 (M.D. Fla. Dec. 6, 2018) ("[T]he letters can still be subject to the FDCPA even if they were prompted by the consumer."). Accordingly, the allegations establish debt collection activity.

2. As Alleged, LLS Is Not a Debt Collector

Coheley's allegations are insufficient to establish that LLS is a debt collector under the FDCPA. A "debt collector" includes "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Miljkovic*, 791 F.3d at 1297-98 (quoting 15 U.S.C. § 1692a(6)).

In conclusory fashion, Coheley alleges that LLS "is a law firm providing debt collection services throughout the State of Florida, including Pasco County," and is a debt collector under the FDCPA. (Dkt. 1 ¶¶ 7, 45-46, 58-59). Courts have found similar allegations insufficient to establish that a defendant is a debt collector. *Compare Reese*, 678 F.3d at 1218, *with White v. Bank of Am., N.A.*, 597 F. App'x 1015, 1020-21 (11th Cir. 2014); *Beepot v. J.P. Morgan Chase Nat'l Corp.*, 57 F. Supp. 3d 1358, 1375-76 (M.D. Fla. 2014).

Coheley also contends that LLS is a "self-professed" debt collector, since the pay-off letter states that LLS has been hired by "Selene Finance LP ('Debt Collector') to collect on a debt on behalf of entity entitled to enforce the Note and Mortgage." (Dkt. 1-2 at 1; Dkt. 21 at 14). But courts have also recognized that "[i]t is largely inconsequential that [a defendant] may have referred to itself as seeking to collect a debt in letters it sent to the [p]laintiff. The relevant test is whether an entity is a debt collector under the statutory definition of the FDCPA, 'not whether the entity has ever stated in a document that it is a debt collector.'" *Faulconer v. Mortg. Elec. Registration Sys., Inc.*, No. 5:12-CV-246 MTT, 2014 WL 583006, at *8 (M.D. Ga. Feb. 13, 2014) (quoting *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1249 (N.D. Ala. 2013)).[2]

Coheley fails to allege sufficient facts establishing that LLS is a debt collector under the FDCPA.[3] The motion is therefore due to be granted as to the FDCPA claims against LLS.

3. Whether Selene and LLS Engaged in Conduct Prohibited by the FDCPA

Coheley's allegations are insufficient to establish that Selene and LLS engaged in conduct prohibited by the FDCPA. In the absence of any indication that the lump sum could include attorney's fees, the failure to itemize the amounts in the letter was not a false, deceptive, or misleading representation or unfair or unconscionable means to collect a debt.

Coheley brings claims under §§ 1692e-f. (Dkt. 1 at 5, 11). Section 1692e prohibits the use

---

[2] Coheley's reliance on *Carlin v. Davidson Fink, LLP*, 852 F.3d 207 (2d Cir. 2017) is unavailing. In *Carlin*, it was undisputed that the law firm was a "debt collector" under the FDCPA. 852 F.3d at 210.

[3] This is not a basis to dismiss the claims under the FCCPA, which "applies to any 'person' collecting a consumer debt; it is not limited to statutorily defined 'debt collectors,' like the FDCPA." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019). And although the allegations as to Selene are similarly conclusory (Dkt. 1 ¶¶ 6, 18), Selene does not raise this as a basis for dismissal. In any event, the FDCPA counts against Selene are due to be dismissed for reasons discussed.

of "any false, deceptive, or misleading representations or means" to collect a debt, including falsely representing "the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." And § 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." In evaluating whether a debt collector's communication violates §§ 1692e-f, this Circuit applies the "least-sophisticated consumer" standard. *LeBlanc*, 601 F.3d at 1193. As the appellate court explains:

> The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

*Id.* at 1194 (internal quotation marks, modifications, and citations omitted). The same standard applies to communications directed to a consumer's lawyer. *See Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1277 (11th Cir. 2016) (although not foreclosing "competent lawyer" standard, applying "least sophisticated consumer" standard where communications were directed at lawyer).

Coheley speculates that the reinstatement and payoff amounts in the letter "likely incorporate[] improper attorneys' fees and costs," but the letter "does not contain a line item for attorneys' fees and costs, or for any other charges or amounts for that matter, so [he] cannot properly determine what may or may not be legitimate charges." (Dkt. 21 at 2). He bases this on a foreclosure action in which Selene sought payment beyond the unpaid principal and interest. (Dkt. 21-3 at 2 ("including, but not limited to, title search expense for ascertaining necessary parties to this action and reasonable attorney's fees")). Defendants respond that failing to include an itemization does not give "a false impression of the character of the alleged debt" and that Coheley

7

has not alleged the amounts requested in the letter were incorrect, that his counsel requested an itemization, or that any itemization was incorrect. (Dkt. 17 at 6; Dkt. 18 at 4).

Courts have found "no general duty to itemize under the FDCPA, and such a requirement cannot be read into an otherwise unambiguous and precise statute." *Humphreys v. Budget Rent A Car Sys. Inc.*, No. 10-CV-1302, 2017 WL 6497285, at *6 (E.D. Pa. Dec. 19, 2017). The court in *Humphreys* nonetheless acknowledged that certain circumstances might necessitate itemization, and that including attorney's fees in an "unexplained balance" that "hid the true character of the debt" could violate the FDCPA. *Id.* (citations omitted). And the Seventh Circuit in *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), found that a plaintiff stated a claim under §§ 1692e-f where a dunning letter did not mention that the payment amount included attorney's fees and was "more than double the original obligation." 383 F.3d at 565-66. The court reasoned "the unsophisticated consumer would not necessarily understand that [the collector] was seeking . . . attorneys' fees, an amount allowed, but not specified, by the contract. Furthermore, . . . we [have] rejected the proposition that a debt collector could provide incomplete information in a dunning letter so long as it provided a telephone number for the debtor to call." *Id.* at 566 (citations omitted).

Evidently, based on materials Coheley provides in his response to the motions to dismiss, the reinstatement and payoff amounts were greater than the principal balance on the mortgage.[4]

---

[4] While materials beyond the four corners of the complaint may not be considered, Defendants do not challenge Coheley's calculations:

> [The mortgage complaint] alleged an unpaid principal balance of $118,541.75 at 6% annual interest from date of default alleged as July 1, 2011. The Payoff Response was good through December 31, 2018, so that would equal approximately $168,500.00 for a payoff of unpaid principal balance and interest allegedly due. The November 20, 2018 Pay-Off Response lists a total payoff of $217,359.47 good through December 31, 2018 which is an approximate unexplained variance of $48,859.47.

8

Including attorney's fees or other costs in the payment amount, even if the costs were allowed by contract (*see, e.g.*, Dkt. 21-3 at 4), could provide a false impression of the amount of debt to the least sophisticated consumer. *See Fields*, 383 F.3d at 565 ("[R]efusing to quantify an amount that the debt collector is trying to collect could be construed as falsely stating the amount of debt.")[5]; *Thebert v. Potestivo & Assocs., P.C.*, No. 2:16-CV-14341, 2017 WL 3581322, at *8 (E.D. Mich. Aug. 18, 2017) ("Thus, the Foreclosure Commencement Letter, by failing to break down the debt, plausibly gives the least sophisticated consumer in [plaintiff's] position a misleading impression about the debt's character (i.e., that the $115,267 figure is only principal and standard interest).").

Unlike Coheley's response to the motions to dismiss, however, his Complaint does not include any indication that the amounts requested in the letter could include attorney's fees or other costs. As Coheley acknowledges, "it is improper to consider anything beyond the four (4) corners of the Complaint." (Dkt. 21 at 4). As alleged in the Complaint, it is not plausible that the failure to itemize the amounts in the letter would mislead the least sophisticated consumer. Coheley's claims are therefore due to be dismissed with leave to amend.

---

(Dkt. 19 at 15). Given the extent of the variance, contrary to Defendants' contention, any misrepresentation would be material, since it would be "capable of influencing the decision of the least sophisticated consumer." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (citation omitted).

[5] Notwithstanding, the court in *Fields* clarified that "when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter. Doing so does not violate the FDCPA." 383 F.3d at 565; *see also Prescott v. Seterus, Inc.*, 635 F. App'x 640, 646 (11th Cir. 2015) (finding FDCPA violation for improperly including estimated attorney's fees).

Selene also relies on *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236 (2d Cir. 2019) (Dkt. 22), but that case did not address the possibility of attorney's fees are included in an amount due, or such a large variance between the principal and the payoff amount. The plaintiff mainly complained of a letter's representation that "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater [than the amount due on the date of the letter]." 918 F.3d at 238-41.

*FCCPA*

In his FCCPA counts, Coheley alleges the same conduct in his FDCPA counts: failing to include "any detailed breakdown or itemization," "hid[ing] the true character of the Alleged Debt," and "knowingly sen[ding] the Pay-Off Demand in an attempt to collect monies from Mr. Coheley that was clearly misleading on its face." (Dkt. 1 ¶¶ 34-36, 60-63). He contends this conduct violates section 559.72(9) of the Florida Statutes, which makes it unlawful to "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). A plaintiff bringing a claim under this section must also show that the debt collector had actual knowledge that the debt was not legitimate or the collector did not have the right to collect the debt. *See Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1313 (S.D. Fla. 2017) (citations omitted).

Coheley's FCCPA counts suffer several deficiencies. First, he alleges by reference the prior factual allegations but does not identify which facts support his FCCPA claims. (Id. ¶¶ 27, 33, 54, 63). Nor does he allege, for example, how the letter was "clearly misleading on its face." And, as LLS points out, apart from legal conclusions, he does not clearly allege that Defendants had actual knowledge that the debt was not legitimate or they did not have the right to collect the debt. (Dkt. 18 at 10-11). And as noted, the Complaint does not mention attorney's fees. Unlike his FDCPA claims, Coheley does not cite any cases finding a FCCPA violation for failing to itemize a pay-off amount when a creditor had a basis to demand attorney's fees or costs. The motion to dismiss the FCCPA claims is therefore due to be granted with leave to amend.[6]

---

[6] Defendants argue Florida's litigation privilege is an alternate basis to dismiss the FCCPA claims. "Under Florida law, absolute immunity attaches to 'any act occurring during the course of a judicial proceeding, so long as

10

## CONCLUSION

Accordingly, Defendants' motions to dismiss are **GRANTED**. (Dkt. 17, 18). Coheley's claims against Defendants are **DISMISSED without prejudice**. Coheley shall have fourteen days from the date of this order to amend his Complaint. Defendant shall respond to the amended complaint within fifteen (15) days.

**DONE AND ORDERED** this 25th day of November, 2019.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

the act has some relation to the proceeding.'" *Solis v. CitiMortgage, Inc.*, 699 F. App'x 891, 894 (11th Cir. 2017) (citation and ellipsis omitted). The privilege applies in FCCPA cases. *See, e.g., Davidson v. Capital One, N.A.*, No. 14-20478-CIV, 2014 WL 3767677, at *5 (S.D. Fla. July 31, 2014); *Bloch v. Wells Fargo Home Mortg.*, No. 11-80434-CIV, 2012 WL 12862806, *5 (S.D. Fla. June 13, 2012). Courts may consider the litigation privilege at the motion to dismiss stage when "the complaint affirmatively and clearly shows [its] conclusive applicability." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2005).

While courts have held the litigation privilege bars FCCPA claims that are based on documents clearly related to foreclosure proceedings, "whether a reinstatement letter is substantially related to foreclosure proceedings is less clear." *Blake v. Seterus, Inc.*, No. 16-21225-CIV-JLK, 2017 WL 543223, at *3 (S.D. Fla. Feb. 9, 2017). The court in *Blake* found "consideration of the litigation privilege is premature" on a motion to dismiss. 2017 WL 543223, at *4; *see also Sandoval v. Wolfe*, No. 16-61856-CIV, 2017 WL 244111, at *5 (S.D. Fla. Jan. 19, 2017), *amended*, 2017 WL 3724584 (S.D. Fla. Mar. 10, 2017) ("[W]hether the conduct in question is inherently related to, and occur[ed] during an ongoing judicial proceeding . . . in the context of [a reinstatement letter] appears to be a factual issue more appropriate for summary judgment or trial."). Likewise, the question of whether LLS' letter is related to the underlying foreclosure action is premature at this stage. (Dkt. 21 at 7-8).